## Shibe's Estate. No. 2

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Isabel Drummond,* for exceptant.

*R. M. Remick,* of *Saul, Ewing, Remick & Harrison,* contra.

VAN DUSEN, P. J., April 6, 1944.—This case was before the court upon preliminary objections to the petition. The facts appear in an opinion reported in 41 D. & C. 315, dismissing the objections. An answer was filed, and a replication, and the matter was referred to a master. He has filed a report recommending the grant of the prayer of the petition. A number of exceptions were filed to this report, but only two points were argued.

We will not repeat all the facts as they appear in the former opinion. In brief, an executor collected rents of real estate for about two years after decedent's death. The lien of certain debts has been preserved by the commencement and indexing of suit. The executor asks for an order under section 14 of the Fiduciaries Act of June 7, 1917, P. L. 447, authorizing him to collect rents for the purpose of paying the debts of testator, such order to be applicable to the rents which he had collected before the petition was filed. The decree prayed for in the petition and the decree recommended by the master and our previous opinion described the order as being entered "nunc pro tunc".

Respondent cites authorities, which may be supplemented by reference to decisions found in "Words and Phrases" under the heading of "Nunc Pro Tunc", to the effect that an order may be entered nunc pro tunc only to correct a record—to make a record of something already done, but not recorded; and an order may not be made as of a prior date to supply the substance of something which was omitted to be done. The expression is often used, however, to characterize an order of a court which may legitimately have a retroactive effect. We see no reason why the words "nunc pro tunc" should not be used with respect to such an order. Passing beyond the nomenclature to the substance, the real question is as to the validity of the retroactive effect of such an order; and this question is earnestly argued on behalf of respondent and deserves serious consideration.

The English common law knew no liability of real estate for the payment of decedents' debts. Pennsylvania early recognized the lien of decedents' debts. Subsequently, legislation has limited the duration of the lien and has provided means of extinguishing it. Until the property was sold in proceedings upon the lien, the rents went immediately to the heir or devisee, and were not assets for the payment of debts and lega-

cies: Report of Commissioners of 1915, commenting on section 14 of the Fiduciaries Act of June 7, 1917, P. L. 447; Reel's Estate, 263 Pa. 248.

Section 14 of the Fiduciaries Act was then enacted. Of this statute it is said in Reel's Estate, supra (p. 252):

". . . the manifest purpose of the Act of 1917 is the correction of a long-standing wrong to creditors of deceased owners of real estate, and, to give effect to that purpose, the act is to be given a liberal construction . . ."

Section 14 is as follows:

"Rents of real estate accruing after the death of the owner of such real estate, who shall die on or after the day on which this act shall go into effect, shall be assets for the payment of debts of such decedent whenever the personal estate shall be insufficient therefor. Whenever the personal estate of such decedent shall appear to be probably insufficient for the payment of debts, the orphans' court having jurisdiction of the accounts of the executor or administrator shall, upon application of any creditor of the decedent, or upon application of the executor or administrator or of any other person interested, authorize and direct the executor or administrator to collect such rents for such period as the court shall fix. In such case the executor or administrator shall have power to collect such rents by action at law, distress, or otherwise, as the decedent in his lifetime might have done as to rents of such real estate; and rents so collected shall be accounted for by the executor or administrator in his account of the personal estate of the decedent."

Respondent's argument is that, until such an order is made, the rents are the property of the heir or devisee and that a retroactive order takes this property away from her.

On further reflection we are of the opinion that, if the entry of an order authorizing the executor to col-

lect the rents is necessary to make such rents assets for the payment of debts, then the argument is sound and a retroactive order should not be made. As indicated in the prior opinion, however, and perhaps not sufficiently emphasized as the proper ground of decision, the entry of the order is necessary only in order to grant authority to the executor with respect to the tenant, so that the tenant may be protected in payments which he may make to the executor rather than to the heir or devisee. Whether such an order is made or not, the statute provides:

"Rents of real estate accruing after the death of the owner of such real estate . . . shall be assets for the payment of debts of such decedent whenever the personal estate shall be insufficient therefor."

If it appears that the personal estate is insufficient— and it so appears here—the rents do not belong to the heir or devisee. If this be so, the granting of authority to the executor now, applicable to a time past, is necessary only for the protection of the tenant against a second demand by the devisee. Nothing is taken from the devisee by the order. It follows further that if the rents are actually received by the executor such rents may be awarded to creditors who have established their liens.

Whether rents received by a devisee, and not by the executor, could be recovered from the devisee by creditors or by the executor acting on their behalf, is a question which may arise, but upon which we will express no opinion. Other considerations would apply to such a situation, one of which occurs to us, namely, the reason which prevents the recovery of voluntary but mistaken payments. The recipient of the money may have spent it, and it may not be fair to require a refund.

The exceptions to the master's report are dismissed. The fee of the master is fixed at $1,250, and this sum, together with the stenographic charges of $261.30 and

fee for filing master's report, $5, to be paid out of the rent fund.

The decree recommended by the master is entered. The expression "nunc pro tunc" is preserved, as it correctly describes the effect of the order.